## Case No. 15,114.

### UNITED STATES v. FIVE HUNDRED AND EIGHT BARRELS OF SPIRITS.

[5 Int. Rev. Rec. 166.]

Circuit Court, E. D. New York. 1867.

INTERNAL REVENUE—COUNTERFEIT BRANDS—BONDED WAREHOUSE—REMOVAL OF SPIRITS.

This was an action to forfeit the spirits for alleged violation of the internal revenue law. The matter was before the court once before, under an exception interposed on behalf of the government to the claim made by Hubbell & Tallent, who represented themselves to be the owners of the spirits. The court decided to allow the claim to stand and now the cause came on for trial on the merits.

The testimony for the government showed that the goods were seized on the 7th of January last in the cellar of No. 68 Water street. No. 66 Water street was then a bonded warehouse, and between the cellars of No. 66 and No. 68 an archway had been cut in the wall through which the barrels had manifestly been rolled from No. 66. In the cellar of No. 66 were found some stencil plate brands with paint and brushes, and shavings as if the tops of barrels had been scraped for rebranding. One hundred and ninety-eight of the barrels were branded as follows: "Highwines. M. D. Brice, Inspector, First District. Illinois, Oct. 5, 1866. Northwestern Distillery Co., Chicago, Ill. U. S. Bonded Warehouse. For transportation to Thirty-Second District, N. Y." The remaining 310 barrels were branded "F. A. Stevens, Government Inspector, Thirty-Second Collection District, New York, Dec. 27 and 31, 1866. French Spirits, rectified by C. Smith, New York." Mr. Stevens was inspector of the Thirty-Second district in December, but was not inspector of the Third district, yet it appeared that he branded the barrels at No. 66 Water street. There was no such rectifier as C. Smith in the Thirty-Second district, but the brand with his name was one of those found in the cellar, and the brands had the appearance of having been recently used. There were five entrances to

No. 66, and one of them, the cellar grating in the back yard, had on a government lock. No. 65 Water street was used as a warehouse by Mr. Crogan, who was also the lessee of No. 66, the bonded warehouse.

The testimony for the defence showed that Mr. Boyd; the agent in New York of Shufeldt & Co., who were the Northwestern Distillery Company in Chicago, sold 1,000 barrels of spirits to the claimant; that he got permission from the collector at Chicago to transport them to the Thirty-Second collection district of New York; that they all arrived and 800 of them were put in a bonded warehouse in that district; that application was then made to the collector for their removal to the Third district, which was refused, whereupon Boyd sent his permits back to Chicago, and obtained new ones to send the liquor to the Third district, and it was sent accordingly to No. 66 Water street—500 barrels arriving before Nov. 15 and the other 500 soon after. It also appeared that in October an application was made to Collector Pratt, of the Third district, to make No. 66 a bonded warehouse, and approved by him, and bonds given, but that the application was not approved by the secretary of the treasury till Dec. 29, subsequent to which time no entries had been made of any spirits for that warehouse. It appeared, however, that in November the goods were entered in No. 66 as a bonded warehouse, and bonds given; that afterward transportation bonds were given at the collector's office of the Third district for 500 barrels at one time from No. 66 Water street to California, and afterward similar bonds for 500 more, and that the collector in November appointed a man named Keith storekeeper for the place. Keith's testimony showed that the 508 barrels seized were part of the 1,000 barrels; that after the transportation bonds were given he authorized the cutting of the hole between the cellars and had not reported it till after the seizure, and that he had sometimes left parties in the building alone for hours together; that he had storekeeper's books, which were produced by the district attorney, but he would not swear that he had not made the entries in them all at one time and since the seizure, but they were taken from memorandums kept at the time.

On the close of the testimony, District Attorney Tracy claimed that the goods were forfeited, and that the court should direct the jury to render a verdict of forfeiture. First —They were forfeited under the 38th section of the internal revenue act of July 13, 1866 [14 Stat. 187], because there had been placed upon them counterfeit and spurious brands. The brand purporting to have been put on by Stevens was spurious because he had no right to brand outside of his district, and the brand "Rectified by C. Smith" was spurious because there was no such rectifier. Moreover, the brands tended to show that the spirits were rectified and branded in the Thirty-Second district of New York, while they were recti-

fied in Chicago. Second—They were forfeited under the forty-fifth section of the same act, because they were found elsewhere than in a bonded warehouse, not having been removed therefrom according to law, because (1) it did not appear that they were removed from Chicago according to law. The evidence showed a permit, but did not show that the proper bonds were given. (2) They were illegally removed from the bonded warehouse in the Thirty-Second district. Having been received there, the collector at Chicago had no right to issue a new permit to the Third district. (3) They were not branded for removal to the Third district, but to the Thirty-Second district. (4) No. 66 Water street was not a bonded warehouse when they were placed there. (5) They never were within the jurisdiction of Collector Pratt, never having been legally in bond in the Third district. (6) Conceding all the prior steps to be legal, Collector Pratt had no authority to authorize their transportation from the Third district to California, because the law gives no authority to transport spirits in bond, except from the distillers' bonded general warehouse to a general bonded warehouse. The district attorney also referred to section 29 of the act of July, 1866, and to section 48 of the act of June 30, 1864 [13 Stat. 240], as amended by the act of 1866.

An important question came up during the testimony, as follows: The defendants offered in evidence permits given by Collector Pratt for the transportation of these spirits from No. 66 Water street to California. The district attorney objected to them on the ground that the spirits having been once removed from the distiller's bonded warehouse to a general bonded warehouse, the law did not allow of a second removal to another bonded warehouse, and that the permits therefore gave no authority for the removal.

THE COURT, after hearing argument. held that the law was as claimed by the district attorney, but admitted the permits as evidence of the intent under which the parties were acting in the removal of the spirits.

Sidney Webster, in reply, rapidly reviewed in order each of the sections, 29, 38, 45, and 48, upon which the district attorney relied, and in respect to the forfeiting clause of the 49th section, claimed (1) that this section only applied to spirits distilled subsequent to July 13, 1866, and that there was no evidence in the case on that point; (2) that the removal denounced was either from the distillery or the distillery bonded warehouse, and no other, and there was no evidence of such illegal removal in this case; (3) that the phrase "proper name or brand" referred only to commercial designation. as for example, calling spirits petroleum; and (4) that the forfeiture depended on prior criminal conviction of the offender. Under the thirty-eighth section, Mr. Webster contended that there was no evidence that "inspectors' brands or plates" had been used with "fraudulent intent," and that the phrase "counterfeit or spurious brands or

plates" in the second clause referred only to brands or plates defined, prescribed and required by law, and not to mere trade marks, as substituting the words "French spirits" for Cologne spirits, or vice versa. He also claimed that this section applied only to spirits distilled subsequent to July 13, 1866, and the prosecution must in any event satisfy the jury of intent to evade the tax, and not an honest intent. This was for the jury and not for the court. He further claimed that the forty-fifth section referred only to spirits which, unlike those in controversy, had never been in a general bonded warehouse, as distinguished from a bonded warehouse; that under this section, spirits which have never been in a general warehouse, if found elsewhere than in a distillery warehouse, and proved to have been illegally removed and tax not paid, may be prosecuted for condemnation in court, or seized by the collector and sold under rules of distraint for taxes; and when the latter mode is elected, and not otherwise, is the burden of proof on the claimant to show the taxes paid, and that the forty-fifth section does not, in any case. apply to spirits on which taxes are secured by transportation bonds.

Mr. Webster claimed that under section 48, of 1864, as amended in 1866, the case could not, on the evidence, be taken from the jury; that, under this section, the prosecution must prove: (1) That taxes had been imposed on the spirits in controversy. (2) That the spirits were found in the control of certain persons identified and described. (3) That such person had at the time of such finding a purpose to sell and remove in fraud of law, and a design to avoid payment of taxes proved to have been imposed prior to the seizure, and that issue under this section is one of fact for the jury.

To the point made by the district attorney that the law of 1866 permitted but one removal to a general bonded warehouse, Mr. Webster cited the contrary decision of the department, its long acquiescence in it, its leading the public to suppose that any number of transportations could be made, and its recent sudden change of opinion. He contended that up to Jan. 16, 1867, the department had induced everybody to believe that transportation bonds could be canceled on payment of the tax, and that after a bond was accepted the owner could do what he pleased with the property therein described.

Mr. Webster also contended that under the doctrines laid down by the supreme court in The Favorite, 4 Cranch [8 U. S.] 347, and Three Hundred and Fifty Chests of Tea, 12 Wheat. [25 U. S.] 586, spirits cannot be forfeited by acts done by other person than the owner or some person trusted by him, nor condemned for any removal proved in this case, made while taxes were secured by warehouse bonds, and added, that in no case is the burden of proof cast on the owner till the prosecution has established affirmatively an illegal removal or possession.

THE COURT—I do not propose in disposing of this motion to touch upon many of the questions argued; they may be, and perhaps are, all of them equally important in the case. I feel bound to put the case at present on the 45th section of the act of July 13, 1866. In my judgment the burden of proof under this statute is upon the claimants, and I think that that applies to all cases coming under the 45th section. That being so, I am of the opinion that there are no questions of fact which can go to the jury. It is my present opinion that the whole case must be held subject to review, when it may be argued more fully before a full bench; that this property was found outside of a bonded warehouse; that the claimants have not assumed the burden which the law casts upon them, and that the property must be forfeited under the 45th section. I think that is the wiser way of disposing of this case, in order that all those points may come up and be fully argued, and then disposed of by a full bench. If the views I entertain of section 45, or the views entertained by the district attorney of the other sections are erroneous, then, after a fuller investigation of the law, the case can be tried before a jury.

Mr. Webster—Does your honor take the case away from the jury also under the forty-eighth section?

THE COURT—I do not put it under the forty-eighth section at all; I leave that out of the case; I do not order judgment upon the forty-eighth section; I base my opinion upon the forty-fifth section. My present impression is it will have to go to the jury under the forty-eighth section. It must be a question of law under the other sections, and I will leave the district attorney the opportunity to sustain his verdict upon all the sections he can, except the forty-eighth section,—under that he cannot sustain it.

Mr. Webster—I ask your honor to instruct the jury that upon the first averment of the information in regard to the seizure there is no evidence before them sufficient to warrant the forfeiture of the property; that there is no evidence that the seizure of this property had been legally made. The first averment of the libel is that the deputy collector seized the following described property. That being the averment of the libel a legal seizure must be proved as an affirmative fact like any other proposition. There is no evidence that a legal seizure has been made, sufficient to go to the jury.

THE COURT—I will rule against you on that point.

Mr. Webster excepted.

Mr. Webster—Also that upon the evidence Dailey, the deputy collector, had no authority to seize.

THE COURT also refused this, and Mr. Webster excepted.

THE COURT—Gentlemen, in the aspect in which this case has turned, the claimants have failed to raise any question of fact for your

disposition. The case turns upon a question of law. I, therefore, direct you to find a verdict for the government, condemning the goods.

THE COURT then allowed the claimants twenty days to make a case, or bill of exceptions, to be presented to the full court.

[Subsequently the claimant moved for a new trial, which motion was denied. Case No. 15,-113.]